2019 IL App (1st) 161326

FIRST DIVISION
May 13, 2019

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

No. 1-16-1326

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 19722 |
| | ) | |
| ALVIS HOLLEY, | ) | Honorable |
| | ) | Nicholas Ford, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Griffin and Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    A jury convicted defendant Alvis Holley of the attempted murders of two police officers, and the circuit court sentenced him to two consecutive 50-year terms of imprisonment. On appeal, Mr. Holley argues that his 100-year term of incarceration was improper because (1) the 25-year sentence enhancement for personal discharge of a firearm that he received on each count cannot apply to the already-enhanced charge of the attempted murder of a peace officer and (2) the circuit court's imposition of consecutive sentences was predicated on an unsupported finding of "severe bodily injury." For the following reasons, we vacate the 25-year enhancements for personally discharging a firearm on each of the sentences imposed and affirm the remainder of Mr. Holley's conviction and sentences.

¶ 2                                    I. BACKGROUND

¶ 3    Mr. Holley was charged by indictment on December 1, 2011, with, among other counts, the attempted murders of on-duty Chicago police officers Ruben Delvalle and Jeffrey Friedlieb. These charges stemmed from a shooting that took place on the night of July 18, 2011, in an alley behind the 4100 block of West Wilcox Street in Chicago. Before trial, the State filed a motion to seek an enhanced sentence, arguing that the attempted murders of the two officers occurred when Mr. Holley personally discharged a firearm that proximately caused great bodily harm or permanent disfigurement to both officers. A jury found Mr. Holley guilty of attempting to murder both officers, and the circuit court sentenced him to two consecutive terms of 50 years imprisonment: a 25-year term for each attempted murder plus an additional 25-year enhancement on each count for discharging a firearm and causing great bodily harm to both officers. 720 ILCS 5/8-4(c)(1)(A), (D) (West 2010). Mr. Holley does not challenge his guilty verdict, and we review the testimony at trial only as it relates to the sentencing issues he raises on appeal.

¶ 4    The trial took place in September 2015. Officers Delvalle and Friedlieb testified that they were in plain clothes, patrolling the city's west side together in an unmarked police vehicle at around 10:45 p.m. on July 18, 2011. Officer Delvalle was driving with Officer Friedlieb in the passenger seat when they noticed a possible hand-to-hand narcotics transaction between two people in an alley. After turning around and pulling into the alley, only one individual was present, a man the officers later identified in court as Mr. Holley.

¶ 5    Officer Friedlieb asked Mr. Holley a series of questions from the passenger window of the police car. When Mr. Holley did not answer, Officer Friedlieb exited the vehicle, announced his office, and ordered Mr. Holley to put his hands on the hood of the car. Mr. Holley did not comply, and Officer Friedlieb then grabbed Mr. Holley's hands and the back of his shirt to force

him to put his hands on the hood. A struggle ensued in which the two men moved down the alley, grappling for control. Officer Delvalle exited the vehicle and ran to assist his partner.

¶ 6    Pulling his right arm free from Officer Friedlieb's grasp, Mr. Holley reached for his waistband, pulled out a black revolver, and fired three shots at Officer Delvalle from about 10 feet away. One shot grazed Officer Delvalle's head and another struck his arm. Officer Delvalle testified that he fell to the ground in front of the car, near the passenger side.

¶ 7    Officer Friedlieb was behind Mr. Holley and holding Mr. Holley's other arm when the shots were fired. Officer Friedlieb reached for his service weapon but, before he could draw it, Mr. Holley turned and aimed his gun at the officer. Officer Friedlieb turned his head away, and Mr. Holley fired one shot into the back of the officer's head behind his left ear. Officer Friedlieb testified that he dropped to one knee and drew his service weapon as Mr. Holley began running westbound down the alley, toward Karlov Avenue. Officer Friedlieb fired one shot at him, striking him in the arm. The officers pursued Mr. Holley to the end of the alley, where he turned right and ran north on Karlov Avenue, out of the officers' view. Officer Delvalle then radioed for assistance and provided a general description of Mr. Holley.

¶ 8    A marked police vehicle arrived shortly thereafter and transported both officers to Stroger Hospital for treatment. Officer Delvalle testified that he received pain medication, was treated for both the graze wound to his head and the wound to his arm, and was released within hours. He also testified that the bullet remains in his arm because it is near an artery and could pose a bleeding danger if physicians attempted to remove it. As a result of the shooting, he gets "tingling in [his] arm, sharp pain sometimes," and has bad nightmares.

¶ 9    Officer Friedlieb testified that at the hospital, he received pain medication and a series of tests. As a result of the shooting, he is on permanent disability from the police force, has

"constant headaches, nightmares, [and] PTSD from it," along with "partial hearing [loss] in [his] left ear" and trouble balancing that has caused him to fall a few times.

¶ 10    Mr. Holley was first implicated in the shooting two weeks after it happened, when detectives received a tip from a jailhouse informant. Multiple witnesses testified that they saw Mr. Holley running down Wilcox Street on the night of the shooting with a gun in his hand. After initially denying any part in the shooting, Mr. Holley gave a statement to an assistant State's Attorney in which he admitted to shooting the two men. In both that statement and in his testimony at trial, Mr. Holley said that he did not know that the two men were police officers and that they did not identify themselves as such before one of them grabbed his arm. He thought they were trying to rob him, and he shot at them in an effort to defend himself. He explained that he carried a gun because he had been robbed on multiple occasions before the night of the shooting.

¶ 11    The jury rejected Mr. Holley's self-defense claim and found him guilty of two counts of the attempted murder of a peace officer. The jury also found that he "personally discharged a firearm that proximately caused great bodily harm" to Officers Delvalle and Friedlieb.

¶ 12    Mr. Holley's sentencing hearing took place on April 11, 2016. At the outset, the circuit court addressed the State's earlier motion for an enhanced penalty, ruling that the 25-year enhancement for personally discharging a firearm proximately causing great bodily harm (*id.* § 8-4(c)(1)(D)) was applicable to attempted murder of a peace officer (*id.* § 8-4(c)(1)(A)). It determined that "the enhancement is appropriate [and] lawful." The court then found that "in this particular case there is severe bodily injury such that consecutive sentencing is required under the law." After considering factors in aggravation and mitigation, the court referenced the officers' injuries, in that "I have a person who is a law enforcement officer who is no longer able

4

to do the job that he loved and another who suffered serious injury. Both of them suffered serious physical injuries as a result of the shooting."

¶ 13    The circuit court sentenced Mr. Holley to two 25-year terms, with a 25-year firearm enhancement added to each term, for a total of 50 years on each sentence. He also made a finding that consecutive sentences were required. This brought Mr. Holley's sentence to a total of 100 years of incarceration. This appeal followed.

¶ 14    Mr. Holley supplemented the record on appeal with his motion to reconsider sentence, dated April 19, 2016. In it, he argued, in part, that his "consecutive sentences imposed by the Court for the Class X offenses are improper" and the circuit court "erred by applying the additional sentencing enhancement for personal discharge of a firearm causing great bodily harm because [the statute] for the offense of attempted murder of a Peace Officer contains an existing *** enhancement."

¶ 15                                II. JURISDICTION

¶ 16    Mr. Holley was sentenced on April 11, 2016, and he filed his notice of appeal on April 20, 2016. We have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 and 606 (eff. Feb. 6, 2013), governing appeals from final judgments of conviction in criminal cases.

¶ 17                                III. ANALYSIS

¶ 18                          A. Sentencing Enhancements

¶ 19    Mr. Holley's first claim on appeal is that the 25-year sentencing enhancements for his having caused great bodily harm were improperly applied to the two counts of attempted murder because the sentencing range mandated in section 8-4(c)(1)(A) of the Criminal Code of 1961 (Criminal Code) already represents an enhanced sentence of 20 to 80 years (720 ILCS 5/8-

4(c)(1)(A) (West 2010)) and the statute contemplates that only one enhancement will apply.

¶ 20    As a preliminary matter, the State incorrectly claims that Mr. Holley forfeited this issue by failing to file a motion to reconsider his sentence. Both a contemporaneous objection and a written posttrial motion are generally required to preserve an issue for appellate review. *People v. Lewis*, 234 Ill. 2d 32, 40 (2009). Before trial, the State filed a motion for the court to sentence Mr. Holly by applying both subsections 8-4(c)(1)(A) and 8-4(c)(1)(D) of the Criminal Code (720 ILCS 5/8-4(c)(1)(A), (D) (West 2010)). The circuit court heard argument from both parties and granted the motion at the beginning of Mr. Holley's sentencing hearing. On April 19, 2016, Mr. Holley sought reconsideration of his sentence, specifically arguing that the court could not apply both enhancements under our decision in *People v. Douglas*, 371 Ill. App. 3d 21 (2007). Mr. Holly has properly preserved this issue for appellate review.

¶ 21    Section 8-4(c)(1) of the Criminal Code outlines the regime under which Mr. Holley was sentenced:

"(1) the sentence for attempt to commit first degree murder is the sentence for a Class X felony, except that

(A) an attempt to commit first degree murder [of a peace officer in the course of performing his official duties] *** is a Class X felony for which the sentence shall be a term of imprisonment of not less than 20 years and not more than 80 years;

(B) an attempt to commit first degree murder while armed with a firearm is a Class X felony for which 15 years shall be added to the term of imprisonment imposed by the court;

(C) an attempt to commit first degree murder during which the person

personally discharged a firearm is a Class X felony for which 20 years shall be added to the term of imprisonment imposed by the court;

(D) an attempt to commit first degree murder during which the person personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person is a Class X felony for which 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court; and

(E) if the defendant proves by a preponderance of the evidence at sentencing that, at the time of the attempted murder, he or she was acting under a sudden and intense passion resulting from serious provocation by the individual whom the defendant endeavored to kill, or another, and, had the individual the defendant endeavored to kill died, the defendant would have negligently or accidentally caused that death, then the sentence for the attempted murder is the sentence for a Class 1 felony[.]" 720 ILCS 5/8-4(c)(1) (West 2010).

¶ 22 Because Mr. Holley's challenge to his sentence requires us to construe provisions of the Criminal Code, our review is *de novo*. *People v. Taylor*, 221 Ill. 2d 157, 162 (2006). The primary objective of statutory construction is to ascertain and give effect to the legislature's intent; the best indicator of this is the statutory language itself, given its plain and ordinary meaning. *People v. Trzeciak*, 2013 IL 114491, ¶ 40. "A cardinal rule of statutory construction is that a court can consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *Id.* "Moreover, criminal or penal statutes are to be strictly construed in favor of an accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute." *People v.*

*Lavallier*, 187 Ill. 2d 464, 468 (1999).

¶ 23    "[A]mbiguous criminal statutes will generally be construed in the defendant's favor" under the rule of lenity. *People v. Johnson*, 2017 IL 120310, ¶ 30. If the ambiguity remains after employing ordinary tools of statutory construction, "pursuant to the rule of lenity, 'the tie must go to the defendant.' " *People v. Gutman*, 2011 IL 110338, ¶¶ 43-44 (quoting *United States v. Santos*, 553 U.S. 507, 514 (2008)). Furthermore, double enhancements to a sentence are prohibited unless "the legislature clearly intend[ed]" such a penalty and its intent "is clearly expressed" in the statute. *People v. Guevara*, 216 Ill. 2d 533, 545-46 (2005).

¶ 24    Mr. Holley contends that the sentence he received, extending the sentencing range under section 8-4(c)(1)(A) and then adding a firearm enhancement under section 8-4(c)(1)(D), was impermissible because "the statute creates five independent crimes, each with its own sentencing scheme," and "the plain, unambiguous language of the statute is that none of the four exceptions overlap." Mr. Holley's position is that he could *either* have received a sentence within the heightened sentencing range articulated in section 8-4(c)(1)(A) *or* he could have received the 25-year enhancement set out in section 8-4(c)(1)(D), but not both. The State, on the other hand, urges us to hold that subparts (A) through (D) of section 8-4(c)(1) can be applied cumulatively.

¶ 25    The parties focus their attention on three cases in which this court has previously considered this issue under section 8-4(c)(1): *Douglas*, 371 Ill. App. 3d 21, *People v. Tolentino*, 409 Ill. App. 3d 598 (2011), and *People v. Smith*, 2012 IL App (1st) 102354. Those decisions have resulted in divergent readings of whether these subparts can be applied cumulatively.

¶ 26    The defendant in *Douglas* was convicted of two counts of attempted first degree murder of a peace officer and sentenced to concurrent terms of 35 years in prison. *Douglas*, 371 Ill. App. 3d at 22. On appeal, he sought to reduce his sentence to simple attempted first degree murder and

have his case remanded for resentencing. *Id.* The State argued that, in addition to the higher sentencing range specified in section 8-4(c)(1)(A), the defendant should also have received, under section 8-4(c)(1)(C), a mandatory 20-year enhancement for personally discharging a firearm. *Id.* at 22-24.

¶ 27    The court in *Douglas* rejected the State's position and affirmed the defendant's sentence, finding that "[b]y creating a Class X offense carrying 20 to 80 years, the legislature well might have believed it was authorizing trial judges to impose severe sentences. That is, the sentence is already enhanced ***." *Id.* at 26. For the court to allow for both sentencing provisions, it would have to "add words to the statute," which "is not [its] role." *Id.*

¶ 28    In *Tolentino*, a different panel of this court declined to follow the *Douglas* decision, dismissing its reasoning as follows: "[T]he court's statement that the legislature 'might have believed' the increased sentencing range contained in subsection (A) represented a built-in enhancement *** [was] merely speculative *dicta*." *Tolentino*, 409 Ill. App. 3d at 606. In *Smith*, 2012 IL App (1st) 102354, ¶ 114, the court followed *Tolentino* and added a punctuation analysis, deciding that subsection (A) flows continuously from section (c)(1) because "[t]here is no punctuation separating paragraph (c)(1) from paragraph (c)(1)(A), but a semicolon follows paragraph (c)(1)(A)." A more recent case, not cited by the parties, builds on the punctuation analysis in *Smith* and agrees with that court that the enhancements can be applied cumulatively. *People v. Jackson*, 2018 IL App (1st) 150487. The *Jackson* court noted that "(c)(1)(A) is punctuated with a semicolon rather than a period." *Id.* ¶ 51. The court then acknowledged, "semicolons typically precede a related but separate concept," which "suggests that section (c)(1)'s subsections must be read disjunctively, so that only one subsection can apply to a given case." *Id.* However, the *Jackson* court went on to find that the use of the word "and" at the end of

the subsections "signals that the General Assembly intended for section (c)(1)'s exceptions to apply conjunctively, not disjunctively." *Id.*

¶ 29    Mr. Holley urges us to follow the construction of section 8-4(c)(1) found in *Douglas* and hold that the circuit court's imposition of 25-year enhancements for each attempted murder count was reversible error. The State argues we should follow *Tolentino* and *Smith* and affirm Mr. Holley's sentence. While at this point, *Douglas* is the minority view, we agree with Mr. Holley that it represents a better reading of the statute.

¶ 30    The narrow issue at the heart of this analysis is whether the General Assembly intended for subsections (A) through (E) to be alternative sentencing options or whether the subsections are to be applied cumulatively. While the *Jackson* and *Smith* courts focused on the lack of punctuation after section (c)(1), the *Jackson* court acknowledged that the semicolons between subsections suggested that they "must be read disjunctively." *Id.* The State and the *Jackson* court focus on the word "and" between subsection (D) and (E), but there is no "and" following subsection (A) and it is that subsection that the State contends should be applied cumulatively to the enhancements that are provided in subsections (B) through (D).

¶ 31    The State is actually advocating a selectively cumulative reading of section 8-4(c)(1), in that it acknowledges that subsections (B), (C), and (D) cannot be applied cumulatively without running afoul of the double enhancement concerns that the court in *Jackson* identified. See *id.* ¶ 53 ("nothing in section 8-4(c)(1)'s plain text contains a statement of legislative approval sanctioning double enhancements" based on the same firearm element). And subsections (A) and (E) clearly cannot be applied cumulatively because (A) provides that attempted murder of a peace officer "is a Class X felony" with an extended sentencing range, whereas subsection (E) mandates imposition of "the sentence for a Class 1 felony." 720 ILCS 5/8-4(c)(1)(A), (E) (West

2010). What the State is actually asking us to do is treat subsection (A) as the baseline in Mr. Holley's case with a permissible sentencing enhancement to be drawn from subsections (B), (C), or (D). However, this reading would only make sense if the "and" that the State relies on were placed immediately after subsection (A).

¶ 32    Although the punctuation and conjunction placement may be confusing, the overall structure of the statute is not. It lays out a sentence for attempted murder and then offers five discrete deviations from that sentence. This Class X offense, which would have a baseline sentence of 6 to 30 years, is subject to modification in one of five ways, based on the fact patterns found in the separate subparagraphs (A) through (E). Nothing in that structure or the statutory language suggests that the sentencing court is to apply more than one of these deviations in a particular case. In our view, the overall structure of section 8-4(c)(1) is a more obvious indication of the legislature's intent than the lack of punctuation between sections 8-4(c)(1) and 8-4(c)(1)(A), the semicolons between subparts, or the use of an "and" to suggest a conjunctive or disjunctive reading. And to the extent that we discern any ambiguity in this statute, we will construe such ambiguity in favor of Mr. Holley under the rule of lenity. See *Lavallier*, 187 Ill. 2d 468; *Gutman*, 2011 IL 110338, ¶ 44.

¶ 33    We find that the circuit court erred in applying the 25-year enhancement from subsection (D) to Mr. Holley's convictions for the attempted murders of the two peace officers.

¶ 34                                B. Consecutive Sentencing

¶ 35    Mr. Holley challenges the finding that he must serve consecutive sentences on two bases: (1) it was against the manifest weight of the evidence because the severe bodily injury evidence "was limited to the complainants' brief and uncorroborated testimony about their injuries," and alternatively, (2) the case should be remanded for resentencing because "the court appeared to

conflate and confuse the applicable standards for imposing consecutive sentences."

¶ 36    The State again responds that Mr. Holley forfeited this issue, but we find forfeiture is not applicable. Courts have repeatedly recognized that, "improper imposition of consecutive sentences *** might violate a defendant's fundamental rights," warranting review for plain error. *People v. Alvarez*, 2016 IL App (2d) 140364, ¶ 17; *People v. Durham*, 312 Ill. App. 3d 413, 420 (2000). Moreover, the issue here—as to whether the evidentiary finding of severe bodily harm was against the manifest weight of the evidence—is similar to a challenge to the sufficiency of the evidence at trial, and such a challenge is not subject to forfeiture. *People v. Cregan*, 2014 IL 113600, ¶¶ 16, 19. Therefore, we will review this issue on the merits.

¶ 37    Generally, under section 5-8-4 of the Unified Code of Corrections, when an Illinois court "imposes multiple sentences of imprisonment on a defendant at the same time ***, then the sentences shall run concurrently unless otherwise determined" by another provision of that statute. 730 ILCS 5/5-8-4(a) (West 2010); *Alvarez*, 2016 IL App (2d) 140364, ¶ 18. As provided in subsection (d)(1), "consecutive sentencing is required 'where the defendant has been convicted of either a Class X or Class 1 felony and where he had inflicted severe bodily injury during the commission of that felony.' " *People v. Jones*, 323 Ill. App. 3d 451, 460 (2001) (quoting *People v. Whitney*, 188 Ill. 2d 91, 98-99 (1999)); 730 ILCS 5/5-8-4(d)(1) (West 2010).

¶ 38    Whether a crime inflicted "severe bodily injury" depends on the facts and circumstances of each case. *People v. Austin*, 328 Ill. App. 3d 798, 808 (2002). "[A] trial court's determination that a bodily injury is 'severe' for purposes of consecutive sentencing may be reversed only if it is against the manifest weight of the evidence." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). We reverse such a finding "only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Id.*

¶ 39    It is undisputed that Mr. Holley was convicted of two Class X offenses. See 720 ILCS 5/8-4(c)(1) (West 2010). Because the sentencing statute requires only that "[o]ne of the offenses" be a Class X crime that inflicted "severe bodily injury," Mr. Holley must show on appeal that the circuit court's finding of severe bodily injury was against the manifest weight of the evidence for both of the officers. *Deleon*, 227 Ill. 2d at 332.

¶ 40    Officer Delvalle testified that one shot grazed his head and another struck him in the arm, where the bullet remains to this day. He was treated with pain medication and released from the hospital after a few hours. The bullet cannot be removed, the wound gives him "tingling in [his] arm, sharp pain sometimes," and he has nightmares from the encounter.

¶ 41    Officer Friedlieb—who arguably sustained a far more serious injury that night—has a bullet lodged behind his left ear, giving him "constant headaches, nightmares, [and] PTSD," in addition to "partial hearing [loss] in [his] left ear" and trouble balancing that causes him to fall. He is on permanent disability from his job as a result of these injuries.

¶ 42    Mr. Holley correctly notes that "[n]o corroborating medical or expert testimony was offered" to support the officers' testimony, but he points to no authority mandating such testimony, and we are not aware of such a requirement. Indeed, our supreme court has affirmed consecutive sentencing on a finding of severe bodily injury based on the victim's account of his injuries, uncorroborated by medical or expert testimony. *Deleon*, 227 Ill. 2d at 334.

¶ 43    Based on the officers' testimony regarding their injuries—particularly that of Officer Friedlieb—we cannot say that the circuit court's finding of severe bodily injury was against the manifest weight of the evidence. See *id.* at 332. Mr. Holley cites our supreme court's holding in *People v. Curry*, 178 Ill. 2d 509, 538 (1997), that the term "severe bodily injury" describes "particularly serious invasions of the person." (Internal quotation marks omitted.) This aptly

13

describes what happened to Officer Friedlieb when Mr. Holley shot him in the back of the head.

¶ 44 The cases Mr. Holley initially cites, in which the reviewing court altered sentences to run concurrently, are clearly distinguishable. The wound in *Durham*, 312 Ill. App. 3d at 421, was described at trial as " 'like a small nick or cut' " for which the victim refused medical treatment. Likewise in *Jones*, 323 Ill. App. 3d at 461, the shooting victim testified that the bullet " 'grazed' " his right cheek and later a " '[d]octor gave [him] a band aid and said it was okay.' "

¶ 45 Mr. Holley points to definitions of "severe bodily injury" in other portions of Illinois law, noting that it is not defined in this statute. The examples he offers, however, address either "*serious* bodily injury" or "*serious physical* injury," and do not clarify the matter. See, *e.g.*, 720 ILCS 5/12C-60 (West 2012) (defining "serious bodily injury" in a portion of the Criminal Code addressing harms to children as "injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ"). Even if we were to graft these definitions onto this statute, they do not aid Mr. Holley because the evidence of injuries to at least one of the police—Officer Friedlieb—meets this criteria. We cannot find that the circuit court's finding was against the manifest weight of the evidence.

¶ 46 Mr. Holley alternatively argues that we should remand his case for resentencing, arguing that the circuit court "conflate[d] and confuse[d] the applicable standards" to impose consecutive sentences. His argument for this alleged confusion is based on the circuit court's use of both "severe" and "serious" to describe the officers' injuries.

¶ 47 At the sentencing hearing, the circuit court found that "in this particular case there is severe bodily injury such that consecutive sentencing is required under the law." Later on in the sentencing hearing, after hearing arguments in aggravation and mitigation for the 20 to 80 year

14

sentencing, the court arrived at 25 years for each conviction. It then referenced the officers' injuries: "I have a person who is a law enforcement officer who is no longer able to do the job that he loved and another who suffered serious injury. Both of them suffered serious physical injuries as a result of the shooting ***."

¶ 48    We do not find that the circuit court conflated or confused the standard for mandating consecutive sentences based on a finding of severe bodily injury. The court made an explicit finding of severe bodily injury early in the hearing, based on the evidence of the officers' injuries. Later, when considering arguments in aggravation and mitigation of the underlying sentences, it characterized those injuries as "serious," which is not an inapt description. The court made these two references to serious injuries well after its initial severe bodily injury finding, in a summary characterization of the events of the shooting.

¶ 49    The two cases cited by Mr. Holley in support of his argument do not convince us that the circuit court confused the standard. He cites *Alvarez*, in which the appellate court vacated the defendant's conviction and remanded for resentencing. There, the circuit court found " 'great bodily harm and permanent disfigurement' " to warrant the 25-year firearm enhancement (720 ILCS 5/8-4(c)(1)(D) (West 2008)) and referenced the " 'seriousness of the victim's injuries,' " but made no explicit finding of " 'severe bodily injury.' " *Alvarez*, 2016 IL App (2d) 140364, ¶ 12. After rejecting the State's claim that "great bodily harm" and "severe bodily injury" amounted to the same thing, the *Alvarez* court found that the "isolated comment about the 'seriousness' of [the victim's] injuries cannot serve as the basis for upholding the court's imposition of consecutive sentences." *Id.* ¶¶ 22, 27.

¶ 50    Mr. Holley also cites *People v. Craig*, 334 Ill. App. 3d 426, 448 (2002), in which the appellate court remanded for resentencing when the circuit court ordered consecutive sentences

under section 5-8-4 of the Unified Code of Corrections (730 ILCS 5/5-8-4 (West 1998)), but made only a finding of "great bodily harm." The appellate court remanded for "the trial court to conduct an inquiry" as to whether there was severe bodily injury. *Craig*, 334 Ill. App. 3d at 448.

¶ 51     Unlike in *Alvarez* and *Craig*, the circuit court here made an explicit finding of severe bodily injury as part of its ruling that consecutive sentences were required. Mr. Holley has not carried his burden of showing us that the circuit court conflated or confused the applicable standard.

¶ 52                                     IV. CONCLUSION

¶ 53     For the above reasons, we reverse and vacate the trial court's imposition of the two 25-year firearm enhancements to Mr. Holley's sentences. We affirm its finding of severe bodily injury mandating consecutive sentences. His sentencing thus consists of two terms of 25 years each, for a total of 50 years of incarceration.

¶ 54     Affirmed in part, vacated in part, and modified as stated.