2021 IL App (1st) 192068-U

FIFTH DIVISION
December 3, 2021

No. 1-19-2068

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of Cook County. |
| | ) | |
| v. | ) | 10 CR 17448 |
| | ) | |
| JABRIEL ANDERSON, | ) | Honorable Luciano Panici, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Delort and Justice Cunningham concurred in the judgment.

**ORDER**

*Held:* The mittimus is to be corrected so that defendant's attempted first degree murder sentences run concurrently to each other, not consecutively to each other; and the trial court properly considered relevant mitigating factors at defendant's sentencing hearing. Affirmed in part; mittimus corrected.

¶ 1    Defendant, Jabriel Anderson, appeals from an order by the trial court after a remand that was ordered by this court. Following a jury trial, defendant was found guilty on an accountability theory of first degree murder, two counts of attempted first degree murder, and aggravated discharge of a firearm. The trial court sentenced defendant to 45 years in prison for first degree

murder and 25 years for each of the attempted first degree murder convictions. These sentences were to run consecutively, for an aggregate of 95 years in prison. On direct appeal, this court affirmed defendant's convictions but vacated the 95-year sentence and remanded the case for resentencing. *People v. Anderson*, 2017 IL App (1st) 150029-U. On remand, the trial sentenced defendant to 26 years in prison for first degree murder and 7 years for each attempted first degree murder conviction, to run consecutively, for an aggregate of 40 years in prison. On appeal, defendant claims that the trial court erred in imposing three consecutive sentences where only one victim suffered bodily injury, and his 40-year sentence violated the United States or Illinois Constitutions where defendant was only 17 years old at the time of the offense. For the following reasons, we affirm the trial court's sentence on each conviction, but correct the mittimus to have the two seven-year sentences for attempted first degree murder to run concurrent to each other instead of consecutive to each other, for an aggregate sentence of 33 years in prison.

¶ 2                                   I. BACKGROUND

¶ 3      The facts of this case are contained in *People v. Anderson*, 2017 IL App (1st) 150029-U, but we will highlight those that are pertinent to this appeal. On May 12, 2010, defendant, who was 17 years old at the time, got into a fight with Tomaras Qualls at a party. After Qualls left the party, defendant and several friends (including codefendants Corey Anderson and Jason Burns) went looking for Qualls to fight him. The group saw a silver Monte Carlo pull up near the house where the party was taking place. Defendant said, "That was them." Burns snatched Corey's gun and fired several times at the Monte Carlo. Qualls was not in fact in the car, but Adam Martinez, Brian Lawson, and Robert Alvarado were. Martinez was fatally shot.

¶ 4      Following a jury trial, defendant was found guilty on an accountability theory of the first degree murder of Martinez, the attempted murder of Lawson and Alvarado, and aggravated

2

discharge of a firearm at Lawson and Alvarado. Defendant was sentenced to 95 years in prison.

On appeal, he raised numerous contentions of trial error and challenged his 95-year sentence.

Defendant argued that his sentence constituted a *de facto* life sentence and therefore was

unconstitutional under *Miller v. Alabama*, 567 U.S. 460, 479 (2012) (eighth amendment to the

United States Constitution "forbids a sentencing scheme that mandates life in prison without

possibility of parole for juvenile offenders.") Although the 95-year sentence was not mandatory,

this court found that resentencing was required by *People v. Buffer*, 2019 IL App (1st) 142931,

¶ 63 (*de facto* life sentence imposed on juvenile offender was unconstitutional where "although

the trial court exercised discretion in imposing the petitioner's sentence, nothing in the record

supports the State's position that the court's reasoning comported with the juvenile sentencing

factors recited in *Roper*, *Graham*, [and] *Miller*"). We affirmed defendant's convictions but

vacated his sentence and remanded for resentencing.

¶ 5    The resentencing hearing was held on September 26, 2019, before the same trial judge

that presided over defendant's trial. The court noted that it was in possession of the mitigation

report filed by defendant as well as a new presentence investigation (PSI). In aggravation, the

State presented the victim impact statement of Laura Martinez, the mother of the murder victim.

The State read her statement to the court. She described the toll the victim's death has had on her

and her family. She expressed a desire that the guilty parties be punished for their indifference to

human life.

¶ 6    In mitigation, the defense presented testimony from Cabeza Anderson, defendant's

mother. Anderson testified that she was 15 years old when she gave birth to defendant, and that

she was living with her family at the time. She stated that defendant was diagnosed with ADHD

and placed in a special education class when he was younger. When defendant was nine years

old, Anderson's boyfriend lived with them. At that time, the condition in the house was "bad," as there was often physical violence towards her by her boyfriend. Anderson testified that since defendant was initially incarcerated, she noticed a change in his growth and maturity, and that in her opinion defendant was not the same person he was at 17 years old. She stated that defendant would have the support from her and the rest of her family if he were released from prison.

¶ 7     Phyllis Loggins, defendant's grandmother, testified that when defendant was born, he was a "rambunctious" child who easily lost focus on things. He tried to be accepted by his peers and was a follower. Loggins testified that she was in bad health and would like defendant to be home for the time she had left.

¶ 8     The State acknowledged the new guidelines pursuant to *Miller* and its progeny. It noted that defendant had a prior adjudication of delinquency for an aggravated battery and robbery. The State went over the facts of the case and reminded the court that but for defendant, who set the events into motion that led to the victim's death, the victim would be alive.

¶ 9     Defense counsel argued that due to science, recent case law, and statutory amendments, juvenile sentencing had changed since defendant's initial sentencing hearing. Defense counsel noted that defendant was only 17 years old at the time of the offense, and that juveniles do not have the same brain capacity as adults. Defense counsel further argued that the facts of the case supported a minimum sentence based on defendant's level of involvement. Based on the *Miller* factors, which were codified by statute, defendant had potential for rehabilitation. Defense counsel highlighted the environment that defendant was exposed to growing up and referenced the mitigation letters of support from family and a former teacher. Defense counsel asked the court to consider defendant's condition, including his ADHD and drug use. Finally, counsel

argued that where defendant was convicted based on accountability, he should not be sentenced to more time than the shooter, codefendant Burns, who was sentenced to 35 years in prison.

¶ 10    After hearing evidence in mitigation and aggravation, the trial court stated:

"All right. I've had the opportunity to review the Presentence Investigation. **

And although the Defendant was not the shooter in this case, based on the evidence presented and as reported in the opinion that Defendant is the one that set the actions and motions that resulted in the murder of Mr. Martinez and also the attempted murders of Mr. Lawson and Mr. Alvarado, had he not – had he not been the person to call these people over for purposes of escalating a fight, this would have never happened first of all.

Second of all, although he was not the shooter, he was initially involved in the shooting in that he specifically, when he saw this vehicle, which he thought were the people that he wanted to fight with, he specifically looked for the gun, "Give me the cappa, give me the cappa," that was the testimony at trial, although he didn't get the gun because the other person that had the gun pulled the gun and shot at the car resulting in the death and murder of Mr. Martinez and the attempt murders of Lawson and Alvarado.

So just to say that he is not – simply that he has less involvement as the actual shooter because he is the one that precipitated this entire action. He is not the one that maybe he was the lookout or things of that nature. No, he was the one who started this whole action. He is the one who called the people over. He was the one that was looking for the gun to shoot, but his friend basically didn't give

him the gun and began shooting himself. So I basically feel that he is just as culpable as the shooter.

And based on that, the Defendant – and I'm constrained by the [s]upreme [c]ourt decision *** in *People v. Buffer* ***, the Defendant is sentenced to the following."

¶ 11    The trial court then sentenced defendant to 26 years in prison for the first degree murder conviction, and 7 years in prison for each of the two attempted first degree murder convictions, all to run consecutively, for a total of 40 years in prison. Defendant filed a motion to reconsider the sentence, which was denied. Defendant now appeals.

¶ 12                                    ANALYSIS

¶ 13    On appeal, defendant contends that: (1) the trial court erred in imposing consecutive sentences where only one victim in a shooting incident suffered severe bodily harm, and (2) the 40-year aggregate sentence was unconstitutional where defendant was only 17 years old at the time of the shooting, was convicted based on an accountability theory, and presented substantial evidence in mitigation.

¶ 14    As an initial matter, we note that the State concedes that the trial court erred in imposing consecutive sentences for the two attempted murder convictions, and that the two attempted murder sentences should run concurrently. While defendant forfeited this issue on appeal by failing to include it in his motion to reconsider, both parties acknowledge that a trial court's error in imposing consecutive sentences should be reviewed under the second prong of the plain error doctrine. *People v. Holley*, 2019 IL App (1st) 161326, ¶ 36 (quoting *People v. Alvarez*, 2016 IL App (2d) 140364, ¶ 17 ("[c]ourts have repeatedly recognized that, 'improper imposition of

6

consecutive sentences \*\*\* might violate a defendant's fundamental rights,' warranting review for plain error").

¶ 15     Generally, under section 5-8-4 of the Unified Code of Corrections (Code), when an Illinois court "imposes multiple sentences of imprisonment on a defendant at the same time \*\*\*, then the sentences shall run concurrently unless otherwise determined" by another provision in the statute. 730 ILCS 5/5-8-4(a) (West 2020). As provided in subsection (d)(1), consecutive sentencing is required where "[o]ne of the offenses for which the defendant was convicted was first degree murder or a Class X or Class 1 felony and the defendant inflicted severe bodily injury." 730 ILCS 5/5-8-4(d)(1) (West 2020).

¶ 16     Consecutive sentencing is mandated only for those offenses that trigger the application of the relevant statutory mandate, with consecutive sentences for triggering offenses to be served prior to any sentences for non-triggering offenses. See *People v. Curry*, 178 Ill. 2d 509, 538-39 (1997). Multiple non-triggering offenses can be served concurrently after any consecutive sentences for triggering offenses. *Id.* Accordingly, the first degree murder conviction was a triggering offense, but the attempted first degree murder convictions were non-triggering offenses, as both parties agree that no bodily harm was suffered by victims of the attempted murder, and therefore the two attempted murder sentences should have run concurrently to each other.

¶ 17     While there is a provision in section 5-8-4(c) of the Code that gives the trial court discretion to impose consecutive sentences "[i]f, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is the opinion of the court that consecutive sentences are required to protect the public from further criminal conduct by the

defendant, the basis for which the court shall set forth in the record," both parties agree that there was no such finding in this case by the trial court. 730 ILCS 5/5-8-4(c)(1) (West 2020).

¶ 18    Defendant does not ask for remand on this issue, but merely asks us to order the mittimus to be corrected to reflect the proper sentencing scheme. We therefore order the mittimus to be corrected to reflect the attempted murder conviction sentences to run concurrently to each other, but consecutive to the sentence for first degree murder, for an aggregate sentence of 33 years in prison. See *People v. Harper*, 387 Ill. App. 3d 240, 244 (2008) (this court has the authority to correct the mittimus at any time without remanding the matter to the trial court).

¶ 19    Having corrected defendant's sentence to 33 years in prison, defendant's argument that his 40-year sentence amounts to a *de facto* life sentence is moot. We note, however, that our supreme court in *People v. Buffer*, 2019 IL 122327, ¶ 41, stated: "We hereby conclude that a prison sentence of 40 years or less imposed on a juvenile offender does not constitute a *de facto* life sentence in violation of the eighth amendment." At exactly 40 years, defendant's sentence would not have constituted a *de facto* life sentence. See *People v. Villalobos*, 2020 IL App (1st) 171512, ¶ 63 (rejecting the juvenile defendant's claim that his 40-year sentence amounted to a *de facto* life sentence under *Buffer*). Additionally, his argument that we should include his mandatory supervised release (MSR) term in his prison sentence likewise would have failed. The MSR term, while part of the sentence, is not imprisonment. *Id.* ¶ 64; see also *People v. Gunn*, 2020 IL App (1st) 170542, ¶ 140 (rejecting identical argument and holding that Buffer referred to *prison* sentences).

¶ 20    Finally, defendant argues that regardless of the length of the sentence imposed, the trial court abused its discretion where it failed to give enough weight to mitigating factors during resentencing.

¶ 21    A sentence within the appropriate sentencing range is generally accorded great deference by this court. *People v. Colon*, 2018 IL App (1st) 160120, ¶ 65. We will not alter a defendant's sentence absent an abuse of discretion. *Id.* "Our supreme court has found that, with respect to a sentence, an abuse of discretion occurs when the sentence is greatly at variance with the spirit or purpose of the law or manifestly disproportionate to the nature of the offense." *Id.* A conviction for first degree murder carries a sentence of imprisonment of not less than 20 years and not more than 60 years. 730 ILCS 5/5-8-1(a)(1) (West 2020). A conviction for attempted first degree murder carries a sentence of imprisonment of not less than 6 years and not more than 30 years. 730 ILCS 5/5-4.5-25(a) (West 2020). Defendant was sentenced to 26 years in prison on the first degree murder conviction and 7 years in prison on the attempted first degree murder convictions. These sentences are well within the sentencing ranges of the offenses and therefore presumed to be proper. See *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. Nevertheless, the defendant argues that the trial court abused its discretion in sentencing him because it did not consider the following mitigating factors required for juvenile defendants pursuant to section 5-4.5-105 of the Code (730 ILCS 5/5-4.5-105(a) (West 2020)):

> "(a) On or after the effective date of this amendatory Act of the 99th General Assembly, when a person commits an offense and the person is under 18 years of age at the time of the commission of the offense, the court, at the sentencing hearing conducted under Section 5-4-1, shall consider the following additional factors in mitigation in determining the appropriate sentence:
>
> > (1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of

behavior, and the presence of cognitive or developmental disability, or both, if any;

(2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;

(3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma;

(4) the person's potential for rehabilitation

(5) the circumstances of the offense;

(6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7) whether the person was able to meaningfully participate in his or her defense;

(8) the person's prior juvenile or criminal history; and

(9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor." 730 ILCS 5/5-4.5-105(a) (West 2020).

¶ 22    The record shows that the trial court considered each of these mitigating factors. Initially, we note that the trial court is not required to articulate each factor that it considered in rendering a sentence, and that when mitigating factors have been presented to the trial court, it is presumed the court considered those factors, absent some indication to the contrary. *People v. Jones*, 2019

IL App (1st) 170478, ¶ 54. Additionally, where a sentencing court examines a presentencing investigation (PSI) report, it is presumed that the court considered the defendant's potential for rehabilitation. *People v. White*, 272 Ill. App. 3d 1033, 1046 (1995).

¶ 23    The trial court was certainly aware of defendant's age, as resentencing was ordered pursuant to *Miller* specifically because of his age at the time of the offense. Defendant's PSI was presented to the trial court, which highlighted his age at the time of the offense.

¶ 24    The court heard testimony from defendant's mother and grandmother regarding his ADHD diagnosis, his placement in special education classes, and his immaturity in general. The PSI noted that defendant attended special education classes for behavioral issues, that he was diagnosed with depression in 2015, and that he was taking medication for his nightmares.

¶ 25    Defendant's mother and grandmother described defendant as a follower who wanted to be accepted by his peers.

¶ 26    Testimony was presented that defendant had support from his family if he were to be released. Defendant's mother testified that when defendant was nine years old, he witnessed physical violence to her by a live-in boyfriend. The PSI indicated that he had a "great" relationship with his mother, and that he had a "good" childhood, with all his basic needs met.

¶ 27    Defendant stated in his mitigation report that he dropped out of high school after the 10th grade, but hoped to get his GED and attend college. He reported being suspended for fighting a few times and attending special education classes for behavioral reasons. Defendant further reported that he used marijuana and ecstasy weekly before his arrest. The PSI showed that defendant was a member of a gang.

¶ 28    Regarding defendant's potential for rehabilitation, defendant's mother testified that since defendant had been incarcerated, she had noticed a change in defendant's maturity and that he

11

was a different person than he was at 17 years old. The mitigation report contained several letters in support of defendant from family members and a teacher. It also indicated that defendant received only a few minor disciplinary tickets in the Illinois Department of Corrections (IDOC).

¶ 29 The court discussed the circumstances of the offense and defendant's level of participation, stating that while defendant was not the shooter, he was the one that "set the actions in motion that resulted in the murder of Mr. Martinez and also the attempt murders of Mr. Lawson and Mr. Alvarado, had he not – had he not been the person to call these people over for purposes of escalating this fight, this would never happened ***." The court noted that when defendant saw the vehicle in which he thought were the people he wanted to fight with, he "specifically looked for the gun." The court stated that defendant had "just as much involvement as the actual shooter because he is the one that precipitated this entire action."

¶ 30 The trial court was apprised of defendant's prior criminal history, which included a 2008 juvenile adjudication for aggravated battery and robbery.

¶ 31 Looking at the above evidence that was presented to the trial court at the resentencing hearing, we find that the trial court considered all of the mitigating factors set forth in section 5-4.5-105(a) of the Code. 730 ILCS 5/5-4.5-105(a) (West 2020). Further, the trial court's careful contemplation of defendant's sentence is highlighted by the fact that it reconsidered the original 95-year sentence and then reduced it to 40 years. *Villalobos*, 2020 IL App (1st) 171512, ¶ 74. There is simply no indication in the record that the trial court did not take the relevant mitigating factors into consideration in determine his sentence. We therefore find that the trial court did not abuse its discretion in sentencing the defendant.

¶ 32                                    III. CONCLUSION

¶ 33    For the foregoing reasons, we affirm the length of the sentences given by the circuit court of Cook County on each conviction, but order the mittimus to be corrected to reflect the two sentences for the attempted first degree murder convictions to run concurrently to each other, for an aggregate sentence of 33 years in prison.

¶ 34    Affirmed in part; mittimus corrected.