2022 IL App (1st) 200094-U

SECOND DIVISION
June 21, 2022

No. 1-20-0094

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 14273 |
| | ) | |
| KENTRELL PLEDGER, | ) | Honorable |
| | ) | Dennis J. Porter, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

ORDER

¶ 1   *Held*:   The judgment of the circuit court of Cook County is affirmed; the trial court properly sentenced defendant pursuant to the applicable sentencing range and properly applied the mandatory statutory sentence enhancement to that sentence.

¶ 2   The circuit court of Cook County convicted defendant, Kentrell Pledger, for the attempt first degree murder of a person defendant knew or reasonably should have known was a peace officer. The trial court sentenced defendant on the basis of two statutory sentencing enhancements: the victim being a peace officer and the fact defendant personally discharged a firearm during the commission of the offense. On appeal defendant only challenges his sentence

on the ground the trial court erroneously applied multiple sentence enhancements to his sentence when it could only apply one of several sentence enhancements provided by the attempt statute.

¶ 3    For the following reasons, we affirm defendant's sentence.

¶ 4                                    BACKGROUND

¶ 5    The State indicted defendant, Kenneth Pledger, on six counts of attempt (first degree murder). Counts I through IV of the indictment alleged that on August 22, 2016, defendant allegedly, with the intent to kill, shot at Carlos Ramos, a person defendant knew or reasonably should have known to be a peace officer. The multiple counts vary in their allegations that defendant shot at Ramos (1) while Ramos was in the course of performing his official duties (count I), (2) in a manner to prevent Ramos's performance of his official duties (count II), (3) while Ramos was in the course of performing his official duties and defendant personally discharged the firearm (count III), and (4) in a manner to prevent Ramos's performance of his official duties and defendant personally discharged the firearm (count IV). Counts I through IV of the indictment allege defendant acted in violation of section 8-4(a) of the Code of Criminal Conduct of 2012 (Code) (720 ILCS 5/8-4(a) (West 2016)). Count V and VI of the indictment also charge defendant with attempt (first degree murder) in that defendant allegedly shot at Carlos Ramos (count V) and that defendant personally discharged a firearm when he shot at Carlos Ramos (count VI) but do not allege the additional fact that Carlos Ramos was a peace officer in the performance of his official duties.[1]

---

[1]    The State also indicted defendant on three counts of aggravated discharge of a firearm, four counts of aggravated unlawful use of a weapon, and two counts of unlawful use or possession of a weapon by a felon. None of those charges are at issue in this appeal.

¶ 6    Defendant does not challenge any aspect of his conviction; therefore, the facts and circumstances leading to defendant's conviction are irrelevant in this appeal. Defendant only challenges his sentence. For purposes of this appeal it will suffice to say that the trial court sentenced defendant to 50 years' imprisonment for attempt (first degree murder). The trial court's 50-year sentence included a sentence of 30 years' imprisonment pursuant to section 8-4(c)(1)(A), 9-1(b)(1) of the Code and an additional statutory 20-year sentence enhancement pursuant to section 8-4(c)(1)(C) based on defendant's having personally discharged the firearm during the offense. See 720 ILCS 5/8-4(c)(1) (West 2016).

¶ 7    This appeal followed.

¶ 8                                    ANALYSIS

¶ 9    This appeal raises an issue of statutory construction. The construction of a statute is a question of law that we undertake *de novo*. *People v. Taylor*, 2022 IL App (3d) 190281, ¶ 26. When this court construes a statute *de novo* it makes an independent determination without deference to the decision of the trial court. *Bendell v. Education Officers Electoral Board for School District 148*, 338 Ill. App. 3d 458, 462 (2003); *Puszkarska v. Chicago Transit Authority*, 322 Ill. App. 3d 75, 78 (2001) (citing *Advincula v. United Blood Services*, 176 Ill. 2d 1, 12 (1996) ("Statutory construction is a question of law to be decided by the reviewing court without deference to the judgment of the trial court)). The determination this court must make is what the legislature intended when it passed the statute, and we make that determination with the objective of giving effect to the legislature's intent. *Taylor*, 2022 IL App (3d) 190281, ¶ 26. "All other rules of statutory construction are subordinate to this principle." *Id.*

¶ 10    To determine the legislature's intent, with the objective of giving effect to that intent, we look first to the plain and ordinary meaning of the language in the statute. *People v. Phagan*,

2019 IL App (1st) 153031, ¶ 90. We also consider "the reason and necessity for the law, the evil it seeks to remedy, and the purpose it seeks to achieve." *Taylor*, 2022 IL App (3d) 190281, ¶ 26 (citing *People v. Frieberg*, 147 Ill. 2d 326, 345-46 (1992)). In particular, penal laws are strictly construed. *Taylor*, 2022 IL App (3d) 190281, ¶ 26. But because the legislature's intent is paramount, we will not construe a penal statute "so strictly as to defeat the obvious intention of the legislature." *Id.* (citing *People v. Kirkrand*, 397 Ill. 588, 590 (1947)). Additionally, we presume the legislature did not intend absurd, unjust, or inconvenient results. *Id.*

¶ 11    We will only resort to rules and other aids of statutory construction that are extrinsic to the statute's plain language if the language of the statute is ambiguous. *Phagan*, 2019 IL App (1st) 153031, ¶ 90 (citing *People v. Jackson*, 2018 IL App (1st) 150487, ¶ 48). We will find a statute ambiguous where it can be understood in two or more different ways by reasonably well-informed people. *Solon v. Medwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010). If the language of the statute is not ambiguous, "our role is to merely apply the statute as drafted by the legislature." *Jackson*, 2018 IL App (1st) 150487, ¶ 48 (citing *Solon*, 236 Ill. 2d at 440). Thus, we begin our analysis with the language of the statute itself which reads, in pertinent part, as follows:

"§ 8-4. Attempt.

\* \* \*

(c) Sentence.

A person convicted of attempt may be fined or imprisoned or both not to exceed the maximum provided for the offense attempted but, except for an attempt to commit the offense defined in Section 33A-2 of this Code:

(1) the sentence for attempt to commit first degree murder is the sentence for a Class X felony, except that

(A) an attempt to commit first degree murder when at least one of the aggravating factors specified in paragraphs (1) [victim is a peace officer] (2), and (12) of subsection (b) of Section 9-1 is present is a Class X felony for which the sentence shall be a term of imprisonment of not less than 20 years and not more than 80 years;

(B) an attempt to commit first degree murder while armed with a firearm is a Class X felony for which 15 years shall be added to the term of imprisonment imposed by the court;

(C) an attempt to commit first degree murder during which the person personally discharged a firearm is a Class X felony for which 20 years shall be added to the term of imprisonment imposed by the court;

(D) an attempt to commit first degree murder during which the person personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person is a Class X felony for which 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court; and

(E) if the defendant proves by a preponderance of the evidence at sentencing that, at the time of the attempted murder, he or she was

acting under a sudden and intense passion resulting from serious

provocation by the individual whom the defendant endeavored to

kill, or another, and, had the individual the defendant endeavored

to kill died, the defendant would have negligently or accidentally

caused that death, then the sentence for the attempted murder is the

sentence for a Class 1 felony." 720 ILCS 5/8-4(c)(1) (West 2016).

¶ 12    The specific question presented by this case is whether the sentence enhancement

provided by the legislature applicable in attempt murder cases where the victim is a peace officer

prevents application of a second sentence enhancement provided by the legislature where a

defendant uses a firearm in the commission of the attempt murder. See 720 ILCS 5/8-4(c)(1)(A),

8-4(c)(1)(C), 9-1(b)(1) (West 2016). In this case we must determine whether defendant is:

(a) subject to a minimum sentence of 20 years' imprisonment and a

maximum 80 years' imprisonment as a Class X felon (720 ILCS 5/8-4(c)(1)(A)

(West 2016)) *and* to having that sentence mandatorily increased by 20 years (720

ILCS 5/8-4(c)(1)(C) (West 2016)); *or*

(b) is subject to a minimum sentence of 20 years' imprisonment and a

maximum 80 years' imprisonment as a Class X felon (720 ILCS 5/8-4(c)(1)(A)

(West 2016)), without any mandatory enhancement, *or* is subject to sentencing

generally as a Class X felon (720 ILCS 5/8-4(c)(1) (West 2016)), and or for their

sentence (6 to 30 years' imprisonment as a Class X felon generally (see 730 ILCS

5/5-4.5-25(a) (West 2016))) to be mandatorily increased by 20 years, but not both.

¶ 13    The issue needed to be resolved is whether multiple provisions of section 8-4(c)(1) may

be applied to a single offense; *i.e.*, the provisions of section 8-4(c)(1) are to be read conjunctively

or the provisions of section 8-4(c)(1) are to be read disjunctively. That is, whether only one sentencing enhancement of section 8-4(c)(1) may be applied to a single offense.

¶ 14    There is currently a split of authority on this question in the appellate court, and the parties ask us to follow one case or the other depending on their position. We note that "the decisions of the appellate court in one district are not binding on the appellate court in other districts. *Universal Metro Asian Services Ass'n v. Mahmood*, 2021 IL App (1st) 200584, ¶ 30 (citing *People v. Harris*, 123 Ill. 2d 113, 128 (1988)). See also *People v. Mister*, 2015 IL App (4th) 130180, ¶ 56 (citing *O'Casek v. Children's Home & Aid Society of Illinois,* 229 Ill. 2d 421, 440 (2008) ("we are not required to follow the decisions of sister districts or, for that matter, our own prior decisions")). Nonetheless, "this court may follow the reasoning of a decision in another district when *** the facts are similar and the court's reasoning is persuasive." *People v. Henderson*, 2012 IL App (1st) 101494, ¶ 29. In this case, defendant argues this court should follow the decision in this district in *People v. Phagan*, 2019 IL App (1st) 153031. In *Phagan*, this court held that "the plain language of section 8-4(c)(1) of the attempt statute does not allow for imposing more than one of the exceptions in subsections (A)-(E)." *Phagan*, 2019 IL App (1st) 153031, ¶ 85. This court's primary reason for reaching that conclusion was that a conjunctive reading of the statute leads to absurd results. See *Phagan*, 2019 IL App (1st) 153031, ¶¶ 100, 102.

¶ 15    First, this court found that although the use of semicolons to separate the various sentencing provisions in sections 8-4(c)(1)(A) through 8-4(c)(1)(E) "[o]rdinarily *** means we would read subsections (A)-(E) disjunctively, that is, only one could apply at a time" (*Phagan*, 2019 IL App (1st) 153031, ¶ 93 (citing *People v. Jackson*, 2018 IL App (1st) 150487, ¶ 51)), that was not the case because, the *Jackson* court found, the "and" transition from subsection (D) to

the then newly added subsection (E) "disrupted the usual inference." *Phagan*, 2019 IL App (1st) 153031, ¶ 94 (citing *Jackson*, 2018 IL App (1st) 150487, ¶ 51). The *Phagan* court did note that the *Jackson* court's finding that "by inserting 'and' at the end of a list punctuated by semicolons, the General Assembly expressed an intent that the subsections apply conjunctively, meaning that more than one can apply to a given defendant at a given time." *Phagan*, 2019 IL App (1st) 153031, ¶ 94 (citing *Jackson*, 2018 IL App (1st) 150487, ¶ 51). But the *Phagan* court departed from the *Jackson* court's reasoning because the *Phagan* court found that *Jackson* failed to take account of the fact that reading subsection (E) conjunctively with the other subsections "brings about an unworkable result." *Phagan*, 2019 IL App (1st) 153031, ¶ 95.

¶ 16 The *Phagan* court found that a conjunctive reading—that more than one subsection can apply to a single offense at one time—produced an absurd result this court could not countenance (*Phagan*, 2019 IL App (1st) 153031, ¶ 100) because "[t]hese two exceptions to the base Class X sentencing range for attempted first degree murder *cannot exist together* because, if the defendant attempted the aggravated form of first degree murder [(for example, of a peace officer, 720 ILCS 5/8-4(c)(1)(A), 9-1(b)(1))], the defendant cannot also have attempted first degree murder plus a mitigating circumstance [(such as acting under a sudden and intense passion resulting from serious provocation" 720 ILCS 5/8-4(c)(1)(E) (West 2016))]. (Emphasis added.) *Phagan*, 2019 IL App (1st) 153031, ¶ 99.

¶ 17 Second, the *Phagan* court found that reading sections (B) through (D) conjunctively "appears to sanction an unintended multiple enhancement" in that, as long as the State proved the factual predicate for the most serious of the three, that the defendant personally discharged a firearm that proximately caused great bodily harm (720 ILCS 5/8-4(c)(1)(D) (West 2016)), the trial court could—and in fact would be required to—impose the 15 (armed with a firearm), 20

(personal discharge of a firearm alone), and the 25-year enhancements (personal discharge of a firearm with great bodily harm) on top of each other. 720 ILCS 5/8-4(c)(1)(B) through 8-4(c)(1)(D) (West 2016); *Phagan*, 2019 IL App (1st) 153031, ¶¶ 101-02. The *Phagan* court relied on the rule that the court must interpret statutes to prohibit multiple sentence enhancements unless there is a clear legislative intent to the contrary and apparently found no such intent clearly expressed in the attempt statute. *Id.* ¶ 101. See also *People v. Guevara*, 216 Ill. 2d 533, 545-46 (2005) (as a rule of statutory construction double enhancements are prohibited but "where the legislature clearly intends for there to be a double enhancement, and that intention is clearly expressed, there is no prohibition"). Thus, the *Phagan* court concluded that "[i]t cannot both be true that the legislature [intended] the subsections to apply conjunctively, which would require the imposition of every subsection that applied, but at the same time did not intend multiple enhancements." *Phagan*, 2019 IL App (1st) 153031, ¶ 101. The court found that both of these problem are solved by simply reading the statute disjunctively. *Phagan*, 2019 IL App (1st) 153031, ¶ 103.

¶ 18   The *Phagan* court found support for its construction of the statute in the fact the legislature had demonstrated its ability to write a statute that makes "the compound application of [sentencing] enhancements unmistakable," and cited examples. *Phagan*, 2019 IL App (1st) 153031, ¶ 104-05. The *Phagan* court found that the legislature could have "expressed its intent to interpret the statute conjunctively "by nesting subsections (B) through (D) under subsection (A), but it chose not to." *Id.* ¶ 106. For those reasons, the *Phagan* court held that "the attempted first degree murder statute *** as it is currently written, does not allow for the imposition of the 20- to 80-year extended sentencing range combined with the 20-year firearm enhancement." *Phagan*, 2019 IL App (1st) 153031, ¶ 107.

¶ 19     In this case, defendant argues this court should follow the more thorough and better reasoned analysis in the "*Phagan* line of cases." However, another division of the appellate court has disagreed and rejected *Phagan*'s holding and its reasoning. *People v. Taylor*, 2022 IL App (3d) 190281. In this case the State asserts the court in *Taylor* acknowledged the split of authority in this court on this issue, undertook to resolve it, *Taylor* did so in favor of a conjunctive reading of the statute and backed up its conclusion, and it should be followed.

¶ 20     As we stated earlier, the primary reason *Phagan* gave for its disjunctive reading of the statute was that to read the statute conjunctively leads to absurd results: either the legislature identified two separate enhancements that theoretically could be applied simultaneously under the statute but which cannot occur simultaneously (see 720 ILCS 5/8-4(c)(1)(A), 8-4(c)(1)(E) (West 2016)); or the legislature intended something it did not "clearly express" it intended (double enhancement), as it has in the past when it provided for multiple enhancements for a single offense. The *Taylor* court addressed both of those grounds for *Phagan*'s holding and found neither warranted a disjunctive reading of the statute. See *Taylor*, 2022 IL App (3d) 190281, ¶ 37 (having found 8-4(c)(1)(A) is a base sentencing range for a status-based offense only one enhancement may apply at a time because double enhancements are expressly prohibited unless contrary intention is clearly expressed in the statute); ¶ 39 (section 8-4(c)(1)(E) is a baseline sentence for the status based offense when mitigating factors are present instructing the trial court to treat the offense as a Class 1 felony, thereby rendering the firearm enhancements inapplicable).

¶ 21     The *Taylor* court found, based on the plain language of the statute, that attempt (first degree murder) is a Class X felony. 720 ILCS 5/8-4(c)(1) (West 2016) ("the sentence for attempt to commit first degree murder is the sentence for a Class X felony"). The attempt statute creates

and imposes a different sentence for a "status-based" (*i.e.* the status of the victim) offense: attempt (first degree murder of a peace officer). The sentence for attempt (first degree murder of a peace officer) is a Class X felony with a sentencing range of 20 to 80 years' imprisonment. 720 ILCS 5/8-4(c)(1)(A) (West 2016). See *Taylor*, 2022 IL App (3d) 190281, ¶ 33. Finally, subsections (B) through (D) of section 8-4(c)(1) create enhancements "that 'shall be added' to whichever sentence range is applicable" (*Taylor*, 2022 IL App (3d) 190281, ¶ 33); *i.e.*, the sentence for a Class X felony (6 to 30 years imprisonment) or the sentence for the status based offense of 20 to 80 years' imprisonment.

¶ 22     The *Taylor* court found support for its conjunctive reading of the statute as a whole from (1) the absence of language prohibiting the imposition of the "firearm enhancements" (720 ILCS 5/8-4(c)(1)(B) through 8-4(c)(1)(D) (West 2016)) to the "status offense" sentencing range (720 ILCS 5/8-4(c)(1)(A) (West 2016)); and (2) the "separate evils sought to be prevented by the status-based offense and the firearm enhancements." *Taylor*, 2022 IL App (3d) 190281, ¶ 34 (citing *People v. Smith*, 2012 IL App (1st) 102354, ¶¶ 114-15). See also *Taylor*, 2022 IL App (3d) 190281, ¶ 35 ("The end result of the interpretation advocated by defendant would allow for an individual attempting to murder a peace officer while discharging a firearm to receive a sentence below the mandatory minimum sentence of an attempt first degree murder of a[ ] citizen under the same facts. This runs afoul of the legislative intent to punish these status-based crimes and crimes committed with a firearm more severely.").

¶ 23     One justice dissented in *Taylor* and found that "[a]pplying the rule of statutory construction, *** the first degree murder provision of the attempt statute does not allow for the imposition of a 20-to-80-year sentence under subsection (A) combined with the firearm

enhancements in subsections (B), (C), and (D)." *Taylor*, 2022 IL App (3d) 190281, ¶ 60 (Lytton, J., dissenting) (citing *Phagan* and *People v. Holley*, 2019 IL App (1st) 161326).

¶ 24    As we have stated, we review this question *de novo*, and we are not beholden to any prior decision by this court. Nonetheless, after independently reviewing the language of the statute, its structure, and considering the evils and objectives it seeks to address, we find *Taylor* better reasoned and reject the reasoning in *Phagan* and the dissent in *Taylor*.

¶ 25    First, we note that the dissent in *Taylor*, by its own admission, places a great deal of the weight of its analysis on the back of the semicolon. See *Taylor*, 2022 IL App (3d) 190281, ¶ 46 (Lytton, J., dissenting) ("It Is All About the Semicolons").

> "The punctuation of a statute, however, is subordinate to its text.
>
> [Citation.]
>
> That is, '[i]n the construction of a statute, its punctuation is to be considered and given weight unless from inspection of the whole act it is apparent it must be disregarded in order to arrive at the intention of the legislature.'
>
> [Citation.]" *In re D.F.*, 208 Ill. 2d 223, 234 (2003).

While we do not say the dissent in *Taylor* is wrong for looking to the grammatical structure of the statute, we do find that its reasoning is insufficient to overcome the legislative intent expressed by the words in the statute. We agree with the *Taylor* court that the legislature's intention is to both protect peace officers and to deter the use of firearms during crimes. See *Taylor*, 2022 IL App (3d) 190281, ¶ 34 (citing *Smith*, 2012 IL App (1st) 102354, ¶ 115). In *Smith*, this court found that "the policy concerns underlying subsection (A)—*i.e.,* deterring the intentional killing of police officers, who take heightened risks in performing their duties— differed from the policy concerns underlying subsections (B), (C), and (D)—*i.e.,* deterring the

use of firearms in the commission of felonies due to the greater risk their use poses to society at large." *Smith*, 2012 IL App (1st) 102354, ¶ 115 (citing *People v. Tolentino*, 409 Ill. App. 3d 598, 605-06 (2011)). Considering the multiplicity of evils the statute seeks to address it is reasonable to read its various provisions conjunctively where appropriate.

¶ 26    Next, we find that *Phagan*'s literal reading of the statute is unfounded. See *Phagan*, 2019 IL App (1st) 153031, ¶ 102. "[S]tatutory interpretation 'cannot always be reduced to "the mechanical application of the dictionary definitions of the individual words and phrases involved." ' [Citations.] A court should not read language in an excessively literal fashion such that it produces an absurd construction. [Citation.]" *Grady v. Illinois Department of Healthcare & Family Services*, 2016 IL App (1st) 152402, ¶ 10. Nor should a court read statutory language narrowly. "We give the statutory language its plain, ordinary, and popularly understood meaning ([citation]), and afford the statutory language the fullest, rather than narrowest, possible meaning to which it is susceptible." *State ex rel. Leibowitz v. Family Vision Care, LLC*, 2019 IL App (1st) 180697, ¶ 36. We find that the *Phagan* court focused on a narrow and literal reading of what the statute permits rather than its purposes. Specifically, the *Phagan* court relied primarily on a confluence of provisions in the statute that might occur if the statute is read conjunctively; but the circumstances the *Phagan* court feared are either expressly prohibited elsewhere (a double sentence enhancement) or cannot occur (an "aggravated" second degree murder). See *Phagan*, 2019 IL App (1st) 153031, ¶ 100 (itself referencing "impossible reading of the statutory scheme" but relying on fact attempt statute seems to contemplate that "impossible" occurrence), ¶ 102.

¶ 27    We find *Phagan* too highly speculative as to what may occur under the literal language of the statute as written if section 8-4(c)(1) is read conjunctively. While the language of that section construed conjunctively appears to theoretically permit a double sentence enhancement, in reality

such double enhancement is prohibited unless an intention to the contrary is clearly expressed, which it is not, and "[s]tatutory construction does not allow for expansive interpretations not contemplated by the legislature." *Dumke v. City of Chicago*, 2013 IL App (1st) 121668, ¶ 23. Nothing in the language of the statute suggests the legislature contemplated section 8-4(c)(1) to operate as a double sentencing enhancement.

¶ 28     Moreover, we do not believe that applying both section 8-4(c)(1)(A) and any of sections 8-4(c)(1)(B) through 8-4(c)(1)(D) is a double "enhancement." "Under the rules of statutory construction, where a statute can be reasonably interpreted so as to give effect to all its provisions, a court will not adopt a strained reading which renders one part superfluous." *People v. Wilson*, 132 Ill. App. 3d 652, 653-54 (1985). Section 8-4(c)(1)(A) is not a sentence "enhancement" in that it does not enlarge an extant sentence. Rather, based on our own reading of the statute, we agree with *Taylor* that section 8-4(c)(1)(A) creates a baseline sentence for a separate status-based category of the attempt offense (attempt first degree murder of a peace officer). Compare 720 ILCS 5/8-4(c)(1)(A) ("the sentence *** *is*" (Emphasis added.)), with 720 ILCS 5/8-4(c)(1)(B) ("15 years shall be *added* to the term of imprisonment") (Emphasis added.)). Therefore, we find that the text of the statute does not force trial courts to act contrary to the mandates of the statute, as the *Phagan* court found and used as a basis to find the statute should be read disjunctively. See *Phagan*, 2019 IL App (1st) 153031, ¶ 102.

¶ 29     Finally, while we do not dispute the *Phagan* court's finding that the mitigation stated in section 8-4(c)(1)(E) and the aggravation stated in section 8-4(c)(1)(A) cannot coexist yet the statute appears to permit both to apply in a given case, the fact the conditions are mutually exclusive (see *Phagan*, 2019 IL App (1st) 153031, ¶ 99 ("the mitigating circumstances that allow for a second degree murder conviction do not apply to the aggravated versions of first degree

murder")) means the statute does not actually operate in that way. Accordingly, we are not persuaded by its analysis. See *supra*, ¶ 28 (citing *Wilson*, 132 Ill. App. 3d at 653-54).

¶ 30    Based on our independent analysis, we reach the same conclusions as the *Taylor* court: subsection (c)(1)(A) of the attempt statute establishes the sentence for the offense category of attempt (first degree murder) of a peace officer (720 ILCS 5/8-4(c)(1)(A) (West 2016)), provides for enhancements to the sentence it just provided for, if certain circumstances exist (720 ILCS 5/8-4(c)(1)(B) through (c)(1)(D) (West 2016)), and later, added a sentence (in section (c)(1)(E)) for a separate mitigated category of the attempt offense (720 ILCS 5/8-4(c)(1)(E) (West 2016)) (despite the use of "and" to add this new provision (see *Taylor*, 2022 IL App (3d) 190281, ¶ 39)).

¶ 31    Therefore, we also disagree with the *Holley* court's conclusion that the statute creates a Class X offense with a sentencing range of 6 to 30 years that "is subject to modification in one of *five* ways." (Emphasis added.) *Holley*, 2019 IL App (1st) 161326, ¶ 32. We believe the attempt statute creates a Class X offense with a sentencing range of 6 to 30 years, a second category of the offense with a sentencing range of 20 to 80 years when certain conditions are met, and that the second category of the offense "is subject to modification" in one of *four* ways—each of which, we note, is enumerated in the same subsection of the statute that created the second category of the offense—based on the fact patterns found in the separate subparagraphs (B) through (E). See *Holley*, 2019 IL App (1st) 161326, ¶ 32. Again, we also agree that "[a]bsent from the statute is language prohibiting the imposition of the firearm enhancements." *Taylor*, 2022 IL App (3d) 190281, ¶ 33.

¶ 32    In this case, therefore, the trial court did not err in sentencing defendant under the statutory sentencing range provided by section 8-4(c)(1)(A) of the attempt statute then, as

required by law, imposing the enhancement to that sentence provided by section 8-4(c)(1)(C).

Accordingly, the trial court's judgment and sentence is affirmed.

¶ 33                                        CONCLUSION

¶ 34     For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 35     Affirmed.